The last case on our docket this morning is 25-60209 Walters v. City of Byram Good morning, your honors. My name is Kevin Vogeltan. I represent the appellant, Mr. Robert Walters, may it please the court. We argue that the district court erred when it dismissed all three of my client's claims. This is a Title VII religious discrimination and reasonable accommodation case. I'd like to cover the reasonable accommodation claim first. I would like to impress upon this court that as it was argued to the district court and it has been briefed on appeal to this court, this is not an undue hardship case. This is a reasonable accommodation case. There's an important distinction. Under the prima facie burden shifting analysis that has been the law in this circuit in the United States for decades, if Mr. Walters approves a prima facie case of reasonable accommodation discrimination, meaning that he has a religious objection to a policy and he was terminated because of that objection, the burden shifts to the defendant to show either that it did provide a reasonable accommodation or alternatively that it could not provide any accommodation because any accommodation would have foisted an undue hardship on the Supreme Court. As we all know, in Groff v. DeJoy a couple years ago clarified what an undue hardship means. In my colleague and friends on the other side's recent Rule 28J letter briefing, they have pivoted to an argument about undue hardship. They tried to bootstrap that argument to some cases outside of this circuit talking about health and safety issues with the COVID-19 pandemic. Critically, that was not briefed or preserved at the district court level. The district court in its opinion did not grant summary judgment or dismissal to the city based on undue hardship. This entire case revolves around one question only, which is, was the accommodation, the single accommodation offered by city of Byron to my client reasonable or not? This court in EEOC v. Universal Manufacturing Court 1990, which was cited in our briefing, overturned summary judgment in favor of a defendant employer when it specifically found that the two reasonable accommodations offered by the employer to the religious objecting plaintiff were not in fact proven to be, on summary judgment, reasonable on their face. They were mandated to decide that question. And that court decided that when we say a reasonable accommodation, reasonability is designed to protect the employee, to ensure that the accommodation offered to the employee is achievable to the employee. The employer is protected on the other hand by the undue hardship analysis. Could you just clarify a few statements in the filings? On page 13 of the brief, you say the board wrote it had offered Walters a reasonable accommodation, weekly lab testing at his own expense. Where in the record did the board write that it would be at his own expense? The board did not, the board didn't write that sentence in the way that you want it. No, I'm quoting your brief. The board wrote it offered Walters a reasonable accommodation, weekly lab testing at his own expense. And I'm asking you, where's the factual support for that statement you made, that they wrote that the reasonable accommodation would be testing at his expense? Where did they write that? You're right, Your Honor. They did not write that sentence to the extent that that sentence implies that that was in their findings of fact. That is incorrect and I didn't mean to imply that. What I meant to imply was it is in the record and it was alleged in my client's complaint that when he said that he could not afford PCR testing, the city gave him a list of allegedly free testing alternatives and then he reported back to the city that he investigated and they did not offer free testing. Okay, so the reasonable accommodation that you agree and the record supports is that the mayor was trying to say you can go to a clinic and get free testing, not at your expense. And the difficulty, am I right, tell me if I'm wrong because I want to explore this with opposing counsel too, is that he goes to those and the allegation is that they said it won't be free, even for firefighters. Correct, Your Honor, that is correct. And critically, he reports back, and again this is in his verified complaint and briefing to the district court, he reports back both to the mayor and the city attorney and when he had his hearing before the Board of Aldermen that it would not be free and that in fact the amount, the cost that he was observing in the community would be about one-half of his take-home pay. And he said, I cannot afford to do this. And so our entire position is that as alleged in the 12B6 context and as a matter of the scan record on Rule 56 summary judgment context, is that resolving all of these inferences in favor of Mr. Walters, the record supports the idea that he could not actually afford to accept the accommodation that was offered. So they contemplated that he could go even as a firefighter and get free testing, but the dispute of fact is that actually wasn't there and he'd therefore lose a lot of his salary. The flip side fact question I have is when I'm looking at this case, am I correct that nowhere in his personal religious statement or in his grievance statement does he say he would take, accept any testing other than random testing? Is that correct? That is correct. He did not discuss his original personal statement submitted to the city and explanation of other testing. Well, it's not that he didn't discuss it. He says, I invoke my right to religious exemption from vaccination and testing. I am objecting to COVID vaccines and testing. And then in the grievance statement, he says he will only mask. He will not take any weekly testing. So where in the record is, is, does it suggest that he would actually have taken any form of other people's testing? It's certainly in the record in document one, which is in the record is verified complaint verified under oath that in fact, he would have accepted any alternative testing that he could have afforded that under this course, longstanding rules about what sort of evidence to be considered on 1236 or summary judgment. We do allow plaintiffs to verify allegations under oath in their complaint. And that is competent summary judgment evidence. That's the only place anywhere here is, is that sentence that he would have accepted in spite of all these religious objections to testing. Is that correct? Well, Your Honor, not only is that correct, but I think that's the most important thing to understand. When he gave his statement to the city, that was not a verified under oath statement. The operative live complaint in this case that the district court based its decision upon was the idea that he could not afford the testing, but the district court determined that it was reasonable. Nonetheless, we say that the issue of reasonability is on 1236. In this case, you have to infer or you have to assume that his allegations are true, and in which case he could not afford it, and on a summary judgment statement. He could not afford it, and he would, if it were free, he would go to a clinic and allow them to test him. Yes, that's exactly what he alleged, Your Honor, although let me be very clear that in the burden-shifting framework that this court has endorsed to determine reasonable accommodation cases, it is actually not Mr. Walter's burden to show that if this accommodation was unreasonable, it's not his burden, like in an ADA context, to come up with another reasonable accommodation. This court has been very clear that the burden then becomes the city of Byron to show that no other reasonable accommodation existed because they didn't make that argument to the district court, and because they haven't made that argument to this court, the only real question is, under the facts that the Board of Aldermen had in front of them, which was that my client stood up at a hearing and told them, as reflected in his verified sworn complaint, that he could not afford the testing protocol, was that a reasonable accommodation for them to require or not? And this court in EEOC v. Manufacturing Group has suggested that that is a question of fact, which we left to the fact finder. We cited in our recent Rule 28 letter in October of last year in the Pruitt case that another district court made that exact same determination. What I would ask the court to consider is that it's very clear in a Title VII reasonable accommodation context, unlike in an ADA context, the city of Byron bore the burden to show, to prove, reasonability. And that, in your mind, that means something that's not financially impossible. Correct, Your Honor. And I wouldn't even limit it to financially. I would simply say that if you look at all of the case law, the balance of the case law, the fact that the Supreme Court in Edsonia has commanded that a reasonable accommodation is one that actually removes the obstacle to doing the job, that it just can't be impossible. Whether it's impossible, this is what this court said in EEOC, it has to be possible from a financial standpoint or from a logistical standpoint. There's no practical, functional difference between telling a firefighter who's making $30,000 a year you can only keep your job if you accept half your take-home pay and saying you're fine. Because under both, the result is going to be the same. Robert Walters could not afford to provide for his family, which is what he told the city, and do what they wanted him to do. And instead of then accepting the truthfulness of that and then exploring an alternative, and everybody, Your Honor, knows what the alternative is, the alternative would have just been let the man buy the $10 Walgreens over the counter test. Or perhaps, and there are cases that certainly this is what employers do, the employer pays the portion of the fee. And if they wanted to say that, oh, we can't pay that portion, that's going to do hardship, they could have, under Groff, put that kind of evidence to the record. They chose not to do that. It was their responsibility to show the reasonability, and we believe that on 12b-6 or a summary judgment standard, they failed to show that. I've used a lot of my time already. I would like to touch on disparate treatment and disparate impact. Disparate treatment. The district court itself, Your Honors, recognized that when Chief Green said that he would have accommodated Mr. Walters, perhaps if he was something like a Jehovah's Witness and not a Pentecostal, that that was direct evidence of discrimination. Mr. Walters filed his complaint under both 42 U.S.C. 2000E-2A and M. 2A is traditional but-for-compromisation. Rule M is the more relaxed motivating factor standard. This Court has suggested previously that if there's direct evidence of discrimination, it would be very difficult conceptually to get around motivating factor discrimination, and yet that seems to be what the district court did. The district court rooted its decision by arguing that there was no evidence connecting, say, the cat's paw of Fred Green to the Board of Aldermen in its findings. With that, I would say two things. Number one, under Rule 56C, Mr. Walters was entitled to challenge the Board of Aldermen's findings and facts. This is a collection of evidence that could not possibly in its current form be admissible in court. It was unsigned. It was unsworn. It was undated. It did not declare who the declarants were. It was clearly written by a lawyer, and it did not critically offer any statement from any Board of Aldermen about why they decided to fire my client. And so in the absence of any evidence whatsoever of what the Board of Aldermen actually discussed in their private executive session, the only evidence in the record is that Fred Green, according to the district court, gave direct evidence of discriminatory animus, and that the Board knew that my client could not afford to undertake their reasonable accommodation. And then despite knowing what Fred Green said, and despite knowing that my client couldn't afford to pay, they fired him anyway. That at least plausibly suggests in a 12B6 context the minimum that this Court has said that a plaintiff must show in a Title VII case, which is an adverse action plausibly related to discriminatory animus. And number two, on a summary judgment standard, he didn't get to depose any of the Board of Aldermen. The leading case cited by the district court and by my colleagues is a case called Harville. But in Harville, which actually concerned what a Mississippi Board of Aldermen did in a discrimination case as well, in that case when you read the record, they allowed full discovery on summary judgment, and the Board of Aldermen were deposed. And so there are no facts in the record, at least not in an admissible context in Rule 56C, we argue, that could have overcome what the district court already found to be direct evidence of discrimination in the case. Finally, under a disparate impact analysis, there seems to be quite a lot of conceptual disagreement between the parties and the district court on this. Our position is very simple. The record suggests that there was only one firefighter who made an objection. It was my client. No one else in the city even had a COVID vaccine mandate, except for the fire department. And the accommodation that was arrived at was arrived at only in response to my client complaining. And it was that, well, if you don't want to test and you have to, or if you don't want to be vaccinated, you have to test. You have to test. You have to go to a lab and test, which I would think, Your Honors, if you tell a man he's got to go to a clinic and get a PCR test, that the natural reading of that statement is that you have to pay for it. But the fact remains that the only people that had to be tested were religious objectors. No one else had that foisted on them. And under this court's prior decision in Stout, if it's obvious that all people similarly situated would be similarly burdened by the facial neutral policy, then we don't have to have statistical evidence allowed to proceed as if it was just really impact. I think that's the case here. Actually, I do have two minutes left. Very briefly, Your Honors, on the Mississippi Religious Freedom Restoration Act. I would simply say that I accept that Your Honors are probably not keen to be the first court that we know of to tell the state of Mississippi what the Mississippi Religious Freedom Restoration Act means in the context of the Mississippi Tort Claims Act. I get that. It is not my fault or my client's fault that no Mississippi state court case has kind of taken that issue up. We do think, on brief, that the reasons we articulated means that the legislature must have meant those to be two separate statutory regimes based on the text. But if there was any doubt in Your Honor's mind, certainly this seems to be an appropriate case to certify a question in the Mississippi Supreme Court on that issue. But we don't think that's necessary. We think that if you read those two statutes together, they are mutually exclusive on critical parts such that unless the Mississippi legislature just screwed up, and we typically don't believe as a matter of statutory construction that that's what you assume, you would have to assume that the Mississippi legislature meant what they wrote in the Religious Freedom Restoration Act. Back to you quickly on the 28J cases. Judge Bybee's decision in the Peterson case. That's a firefighter case. What was the accommodation offered there? Yeah. The Peterson case, I believe, 9th Circuit, 2025. So I believe that there was different accommodations offered. I think that there was unpaid leave for a period of time. I think there was – I have a note on it. That's right. Unless you have a note that you want to distinguish that case or you just think it's more of an undue hardship case? I think it certainly is an undue hardship case, but I would say that I dupe my notes to myself, or that that case was decided after a full summary judgment record that the governmental authority put on its own expert testimony about why it would be an undue hardship to allow the firefighters not to be vaccinated. I'm sorry. May I finish my thought? And that unlike this case in which there was only one person who objected and would need to be accommodated, I think that there were dozens of firefighters that objected and needed to be accommodated. And lastly, Your Honors, I would say that if reasonable accommodation means that you have to take into context the facts and circumstances, I don't know if a California 9th Circuit can tell a Mississippi jury much about either reasonable accommodations or how to fry a piece of catfish. And I would say that this circuit is in a better position to decide what's reasonable in the context of what Mr. Walters went through. Thank you so much. Good morning, Your Honors. May I please have the floor? Over the past year, the first, ninth, sixth, fourth, and seventh circuits in that order have decided cases that make this case structural. In three of those decisions, the court held that an employer acted reasonably under Title VII, where no accommodation at all was offered to a vaccination group. Of course, that's not the fact of this case. In this case, even though the plaintiff was a firefighter who responded to mostly medical calls, even though he worked in closed quarters on a 24-hour shift and fought next to other firefighters, he was offered an accommodation of masking testing, which is precisely the accommodation that the plaintiffs in the other cases said that they should have been offered and would have been reasonable under Title VII, and precisely what the EEOC and some of the employers all over the country said would have been reasonable under Title VII. The district court got it right, and we asked the court to affirm. Since the plaintiff places so much emphasis on appeal, on the cost of the alleged testing, as well as the city's alleged not allowing him to take an ad hoc test, I want to start there, because both of those things are red areas, and I want to make sure that the record is clear on those points. I will emphasize the plaintiff's grievance as well as his personal statement. In both of those documents, at 80 through 82 of the record, he told the city, quote, that he would not test in any manner, that he had a religious objection to both. That is why at the record at 21, he can say no more than, if it had been offered to me, then I would have tested. Putting aside the fact that it's the plaintiff's obligation to request accommodation under the law, there's no reason in the world that the city would have offered him or even discussed retesting him when he had told them, I will not test in, quote, any manner, and that has never been disclaimed until this lawsuit was filed. What this case is really about is he would prefer accommodation. He told them, I think reasonable accommodation is masking, and that's what I'm willing to do. I'm aware of no decision, the city is aware of no decision in any jurisdiction around the country that would allow an employee to hold their employer hostage in that manner. Which of the cases that talk about masking and testing talk about the cost of the testing? I'm not sure that any of the ones that we cited get into that. There's only one that I'm aware of now. I would point to Judge Bobby's opinion, for example, in the Ninth Circuit, no testing at all, and he don't get there because they said he's in the medical field, and therefore, we don't have to give any accommodation at all. We certainly get that from the robbery he committed in the First Circuit. The one that really talks about the testing is Judge Busch-Larson's opinion in the Sixth Circuit. And so they got into a debate there where the plaintiff said, well, I don't like to test you. You're requiring Alex Lobb to test me. Are we talking about Henry? That's Henry. And Judge Larson said, no, that's not a reasonable alternative. I think that opinion is helpful, too, for another reason. Obviously, the National Federation v. OSHA opinion went to the Supreme Court about the OSHA mandate where they tried to push it on every employer all over the country and the court stayed that case. That's the one where Judge Larson was vindicated from her dissent in the Sixth Circuit, and the whole thrust of the United States Supreme Court's opinion, especially the concurring opinion from Justices Gorsuch, Aaliyah, and Thomas, was that these are exactly the type of decisions that local governments are supposed to be making, not federal agencies. Well, that's exactly what happened in this particular case, is that the local government made the ruling. There's a few other points that I think really come out of this developing consensus in the circuits. Again, I'm going to go back to Judge Bobby O'Brien in the Ninth Circuit. He persuasively has this really good line of opinion where he says, look, we can't armchair quarterback this stuff through post-payment banks in 2026. We've got to look at it at what employers we're facing in 2021. And what we knew in 2021 is that the federal government was mandating vaccines on the military even before their FDA approved CMS and saying all health care workers all across the nation had to get vaccines. You had the EEOC that was developing all these policies and telling employers this is the precise way you're supposed to be. But if the city here said, we're OK with you going to test and here are the clinics and they're free. But then his allegation is it didn't turn out to be. Well, OK, so again, another helpful case is the recent decision in the Arts and Humanities from this court, that on the 12th you see it's talked about the sincerity of religious objections. When you have multiple objections to vaccines, some may be religious in nature. Some may be, you know, caused other things. He had multiple objections here. He said, I got a religious objection. I think it costs too much. I think it would ruin my nasal cavity. I think it would violate HIPAA. He said a bunch of things. But once he invokes that religious objection and says I won't test in any manner whatsoever and he never disclaims that to the city. Well, there's no reason in the world for them to even get into that. Now, certainly they contemplated some type of free testing because of the four examples that they gave him in response to his grievance. But there's nothing in the record that suggests he went before that court of aldermen and said, hey, I'm disclaiming my religious objection and I think it costs too much. I thought he alleged in his complaint that he went back to the city and said this is going to cost half my take-home pay. That didn't happen? He does allege the cost. But that was one of four different objections that he made. The one that gets him into accommodation land and that we would have to discuss, that's the religious objection. And that's what he never disclaimed. So there was never any reason for the city to think he was ready to give up that position. But you still have an obligation to offer a reasonable accommodation. And you can say, look, we've looked at all these cases and we think masking and testing is a reasonable alternative. Right? As you did.  So it turns out that the whole case, I think, hinges on, or at least this aspect of it, the accommodation piece, hinges on whether and to what extent you actually offered him a testing alternative, doesn't it? I don't think so. Because, again, if you go back to Peterson, if you go back to Roderick, if you go back to those decisions and say, hey, this guy's a health care citizen. He's a firefighter responding to medical calls. We don't have to offer him anything. Well, we've got sort of two different, we're talking about two different things. And I'm happy to do them both, but let's try to isolate them. The idea that he's a health care worker is tricky, right? Both because he wasn't a health care worker. He works in the fire department. And because, like, the police department doesn't do any of this. Right? So if we're going to go back and try to figure out what was the state of the world in 2021, there were lots of subdivisions across the country and across the circuit, including in this city, that did it differently than the fire department.  That's right, Robert. I would emphasize the point that you say he's just a firefighter. That's true. But it is in the record that the majority, the number 80% is coming to my mind. But I know it's safe. The majority of the calls of this small town health department, they were not firefighters. They were fighting. They were medical calls. They were all EMTs. And they're responding to the senior citizens that have issues. They are medical calls. Well, I would never say just a firefighter. Because, obviously, I have an immense respect for them. What I was trying to say is different than someone in a hospital, et cetera, as evidenced by the fact that we don't have the same rules for the police department that's responding to the same EMT calls. Right. Well, I think the fire department is who's responding to the medical calls. I would suggest that it's not the police department. So you think there's a meaningful distinction between firefighters and police officers? I think so. Okay. I think that the medical calls is what it is. And the other meaningful distinction is the 24-hour shifts, and they sleep right next to each other in parks. Fair enough. So let's put a pin in that and say there's a meaningful distinction between firefighters and police officers. If you have an obligation to offer a reasonable accommodation, just give it to me for a second, because the city did. Right. I recognize you have a different argument now. All these cases that you're citing are post, you know, they're ex post developments or post hoc developments. These things happened after the decision making, after the termination, et cetera. At the time of the decision making, when you were offering him the accommodations, you said mask and test. Right. Your client, to be clear. Right, right. So if it turns out that the testing is not actually an accommodation, I don't see how that's not a problem for you. Again, assuming you have to offer some sort of accommodation. Right? I don't understand how you're trying to put it back on him and say, well, he had to drop his religious accommodation claim for us to give him anything. No, he's saying, I have a religious obligation to the vaccination. And then you're in a fight about how to get around the vaccination requirement. Well, I guess my point's a little different. My point would be, I don't think you, I think the fact that we offered him more than we ever had to offer him, we don't, we're not punishing him for that. I mean, the fact of the matter is, he's a health care worker. And we could have said, sorry, but, you know, we're not going to offer you anything because you respond to medical calls. We're not going to let you mask and test. Did you ever tell him that? Did you say like, no, we're not offering you anything, vaccination or the highway? Well, there is the initial conversation directly after the FDA approval where the plaintiff says he offered the August 21st, August 21st letter from the Pentecostal church. And the context of that is the chief said, I'm reading your letter. And this letter just says that the Pentecostal church doesn't have it. They leave it to you. And then again, under our ability, the court tells us, well, you know, although the bar is certainly not high to have a sincere religious belief, there is something to it in the sense that you have to express your religious conduct. Well, your church is, I'll leave it to your religious determination. He says, I have a religious objection. That's it for me. Yeah, that's fair, Your Honor. But the court has said you certainly can require the person asserting the religious belief to reduce that to writing. And that letter from the church that says we leave it to our members, the member still has to articulate what his opinion is. Is that the reason given he didn't reduce his religious objection to writing? I'm sorry? Is that the reason the alderman gave he didn't reduce his religious objection to writing? No, no, no. This is early on in the state. All right. Later on, the city makes clear that it respects his religious observance. So why are we talking about the Pentecostal church letter? I don't understand. Well, just in response to the question about would he ever have been offered anything else, we didn't get into the conversation about accommodation until we accept the fact that he's asserted a religious objection. Let me give a different example. Say I would have come to the city and I said, you know, I'll take his opinion. I think it would ruin my name or character. Okay? Well, we don't have any kind of obligations in that scenario. So the reason we're talking about what the beliefs of a particular church or a statement of conflict by a particular plaintiff is because you have to get that threshold. You've got to get that. I thought we were past that. He said I have a religious objection. You all said, okay, here's your accommodation. I agree. So now where are we? Now where are we is that under the case law, we did not have to offer because of his health care status, because he's a 24-hour worker, because he slept next to other people. We would not have been on solid ground under the case law had we not offered him anything. But I guess Judge Holden's point is you didn't choose that. And forget why, whether it had to do with Chief Green and the sort of bizarre set of exchanges. The fact is that very openly there was an offer, and it can't just be an illusory one like bait and switch. Go to this free clinic. Ha, ha, ha, it's not free. Well, again, Your Honor, I don't think that you can't punish an employer for doing more than they have to do. Well, if they're creating obstacles that they're offering things to firefighters that don't even exist? Well, Your Honor, I would say it's important to take additional notice that in August of 2021, the health departments all over the United States, especially the Jackson Metro area, had free testing. The city got on the Internet and Googled where the free testing were and gave them a list. They were just examples of that. But, I mean, even taking, okay, but even taking his office. Oh, I didn't understand it. I just assumed what had happened was they found ones that had first responder free testing because a lot of facilities would do that then. But he may have gone and they didn't understand he was a first responder, so he gets told no, and the record is just unclear. Could be, Your Honor. And even if you spot, again, the first point is I don't think it matters. If you take the position that we wouldn't have had to offer to you anything, then I'm not sure that matters. But even if it does matter and you get into that, there's the judicial notice aspect of it, but even if it were a cost component to it, this court has been clear that a cost burden doesn't equate to unreasonableness. In fact, the quintessential example that you see all the time in these accommodation cases are if somebody offers them the accommodation at a lower paying position and the fact that they're going to get less pay, that doesn't necessarily render it unreasonable. And the corollary to that is if his point is, well, they shouldn't pay for my testing, well, that means somebody has to pay for his test. All right. You said they asked, let's take the home testing issue off the table. I haven't heard you talk about that. About what? Home testing. You said, well, let's just take that off the table, and then you never came back to it. Okay. Well, the issue with the home testing is that was never a conversation because he said he had a religious objection to quote, ADM 82 of the record, to quote, any testing of any matter. So, of course... When he came back and said, I object because it's going to cost half of my salary, why didn't home testing come up? I don't get that. Well, because if you tell somebody that I'm not going to test in any manner whatsoever because of cause, because of religion, because of hip hop, because of nasal cavity, then the employer is allowed to take him at his word. And so he said he wouldn't test for any matter whatsoever. Is that in his complaint? Or how is that? Is that something outside his complaint? No. The only thing in his complaint is record at 21 of the complaint. He says, if I would have been offered, quote, then I would have accepted it. So, it was never discussed. Well, you're saying, you're now saying the evidence was he would not have accepted it. I'm asking you, was that in his complaint, that he would not have accepted it? No, that he would not have accepted it. That's your argument. Your argument seems to us, well, he wouldn't have accepted the home testing. Right. But does he allege in his complaint that he wouldn't have accepted it? He only disclaimed a religious objection once he filed this lawsuit. But his lawsuit is a 35-page complaint that references every material document that is relevant to this case. That's why in response to my motion to dismiss. That's what I'm getting at. You're taking these facts from something that is referenced in his complaint. Yes, ma'am. Okay. 35-page complaint, every document. And so, this document post-dates his coming back and saying, well, I went to get free tested and it's not free. It's going to cost half, which would to me imply I'm now willing to be tested. This is too costly. Then what happened? Well, the timeline here is that there was an initial discussion with the chief where he brought the letter. And the letter said, you've got to tell us more, which he says in his complaint. That's why I drafted the September 17th, I think it was, personal statement. We get the personal statement. That's the first time he says I have a religious objection to both testing and to the vaccine. Then that's when you get the letter back from the chief that says, well, this is what we're willing to do. We take no issue with the sincerity of your religious belief. We're willing to offer you masks and testing. That's when he files the grievance next. The grievance reiterates the same religious objection to the testing as well. Then he has the meeting with the mayor and then ultimately he goes before the board. At no point is there any evidence in this record that he retracted his position. Then why was he complaining about the costs of the testing? I don't get that. Because it was one of four different objections. Why didn't the city respond, well, we'll accept a home test. If that's your objection, it doesn't seem like there was any kind of give and take here. Again, it's a concept. The interactive process is not required like it is under the ADA. His point was, I've got a bunch of problems with your rule. They seem inherently conflicting. I will not take any tests because of religious objections versus I can't test because it's too expensive. Well, I don't think so, Your Honor. I think, again, the Hartzman case talks about having both religious and non-religious objections to vaccine rule. I think his point is, I was trying to emphasize all the problems that I thought there was with this particular protocol. When was home testing brought up at all? His complaint on record at 21 when he filed this lawsuit. What does he say exactly about it? If it would have been offered, I would have accepted it. Did he allege that was communicated to the city? It does not. Okay. That's why he says, if it would have been offered. Again, it's the plaintiff's obligation to request an accommodation under the case law. The employer's obligation to consider that accommodation and respond accordingly. He never and far from ever say, well, what about testing? It's too costly. So, it's possible he could amend his complaint to allege a failure to accommodate. I mean, we don't know what the facts are. We don't know if he told the city, well, I'll accept home testing. You're just saying he didn't allege that. It's possible he could allege that. Well, I think it's his obligation to allege it. We take the facts as the allegations as they are. But again, I think all of it is a moot point because he's a healthcare worker, to which they wouldn't have had to offer him masking and testing at all. And again, Judge Larson's opinion and Judge Bobby's opinion are what I would ask the court to consider. Thank you for your time.  Up until oral argument was granted and Rule 28J letters started getting filed, here's what the city of Byron actually said about its obligations under Title VII. The set record, 67, this is from the findings of fact that they incorporated themselves into the record. Quote, the city understands it has a duty and the city believes it has met its duty to provide a reasonable accommodation to an employee with a religious objection to a vaccine mandate, having given Mr. Walters an alternative option to maintain employment while upholding his own beliefs. Record 67. That is what Judge Wingate based his decision on, the reasonableness of that accommodation. That is what they argued to this court. It is not fair to the plaintiff that now Johnny come lately, they want to go and pivot and say, oh, actually this is not a reasonable accommodation case at all anymore. It's an undue hardship case. Did he ever ask to be allowed to do home testing? Your Honor, I don't want to misspeak. All I can tell you is that in the complaint, it's not alleged in the complaint that he had that conversation. Instead, it was actually alleged in the complaint apropos of your questions, Your Honor. This is on record 22 and 23, the complaint starting at paragraph 96. Mr. Walters timely initiated step three of the grievance process. Mr. Walters addressed the Board of Aldermen during his October 20th, 2021 meeting. Mr. Walters once again reiterated the nature of his religious objection. He reiterated that Chief Green recruited him based on his assertion at the time that Mr. Walters would not be required to undergo weekly COVID-19 testing. Mr. Walters again reiterated that Chief Green at first rejected his request for exemption because Green did not reckon that his religious beliefs as an adherent of the Pentecostal faith were worthy of protection. And critically, Mr. Walters again reiterated the impossible financial cost of paying for weekly COVID-19 testing, as his own expense. As you correctly pointed out, Your Honor, the entire import of that conversation is obviously the man is willing to test. That's how he figured out that there was no retesting, is that he set about to do it. That's why he made the objection. Counsel, what do we do with the part of the record? I'm not sure exactly what this document is. It looks like answers to interrogatories or something. At page 80 and 81 where he says, I'm not going to test. My religious objection is not just to the vaccine. I hereby invoke, this is 81. I hereby invoke my religious exemption to not only the vaccine but testing as well. This is an official grievance statement. Your Honor, that statement was made prior to much of the operative allegations and the complainants, certainly before he came to the Board of Aldermen to plead his case that he couldn't afford testing. In other words, they want this court to believe that the burden-shifting mechanism inherent to Title VII reasonable accommodation cases just doesn't apply. They want this court to believe that because Robert Walters himself didn't propose the accommodation that might have been workable for him, that he's out of luck. That is not this circuit's jurisprudence in Title VII accommodation cases. Maybe under the ADA it is, but under this court, if I may finish the thought, Your Honor. I want to hear it. Under this court's interpretation, once the religious objection has been made and he has been terminated because of his conflict with the religious objection, the only way that the city of Byron can escape liability is they must prove by a congruence of evidence and affirmative defense that they at least offered one accommodation which was reasonable. It does not matter that Mr. Walters didn't suggest at-home testing. In fact, he didn't suggest that that is not his burden to bear under this court's perception. He alleges they offered free testing. He goes back and tells them it's not free. Did they say home test? Did he say a home test? I'm just trying to—let me ask this. Did he ask for a right to amend? Did he ask for a chance to amend to allege facts that would kind of engage on this? I think the answer to your question, Your Honor—he asked two questions. The answer to the first question is after he told them I can't afford, there was, in reality, no more conversation. They told him to pound sand. And he did not ask to amend because—and I believe this is true today. I think that under both Rule 1256 and Rule 56, he doesn't need to amend. He has alleged that this court in McLintock and St. Lucie's and Raj and all these other cases is all that he has to allege, which is he was fired in circumstances which plausibly allege either a failure to accommodate or disparate treatment. And whether or not the jury will believe him, that is a credibility issue. Whether or not they'll believe this is the environment, that is a credibility issue. That's not something that we would normally dismiss the man on without any opportunity for discussion. Thank you, sir. Thank you. That will conclude the arguments from this panel for this week. Our court stands adjourned. These cases are under submission. Thank you.